IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


STACEY CARTER                    :           CIVIL ACTION
                                 :
         v.                      :
                                 :
JOHN E. POTTER, Postmaster       :
General, United States           :
Postal Service                   :           NO. 09-2897


MEMORANDUM

McLaughlin, J.                                      July 21, 2010


        The plaintiff, Stacey Carter, brought suit against the

United States Postal Service ("postal service"), alleging

employment discrimination and retaliation based on race, color,

and sex.  He claims that the postal service improperly removed

him from a supervisory position, and that it failed to provide

him with training and opportunities for advancement.  The postal

service moves to dismiss the complaint, or in the alternative,

for summary judgment.[1]  For the reasons that follow, the Court

grants the defendant's motion.

---

[1] The postal service also moves to strike liquidated and
punitive damages claims.  The plaintiff does not contest this
aspect of the defendant's motion.  Pl.'s Opp. 15.

I.  <u>Summary Judgment Record</u>[2]

The plaintiff is an African American male who began his employment with the postal service in 1992. At all times material to this lawsuit, the plaintiff held a letter carrier bid position at the post office in Ambler, Pennsylvania. At some point in 2000, the plaintiff became a "204B," which is a temporary supervisor employee. In the Spring of 2004, he was working as a 204B customer service supervisor in the Haverford post office.[3] Transcript of EEO Hearing, at 93-95, Jan. 8, 2009, Ex. 2 to Def.'s M.;[4] Notification of Personnel Action, Form 50,

_____

[2] The Court converts the defendant's motion to a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 12(d). The defendant characterizes its motion as a motion to dismiss, or, in the alternative, for summary judgment, and both parties submit materials beyond the pleadings that the Court accepts and considers. <u>See</u> <u>In re Rockefeller Ctr. Props. Sec. Litig.</u>, 184 F.3d 280, 288-89 (3d Cir. 1999); <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 578-79 (3d Cir. 1996).

[3] The plaintiff alleges in his complaint that he was a Level 17 supervisor at the Haverford post office. Compl. ¶ 10. The defendant asserts that the plaintiff was never a Level 17 supervisor and was always a letter carrier being allowed to work on a temporary basis as a supervisor. During an administrative hearing held on January 8, 2009, for the plaintiff's EEO complaint that underlies the present lawsuit, the plaintiff testified that he was a 204B temporary supervisor employee. Transcript of EEO Hearing at 94, Jan. 8, 2009, Ex. 2 to Def.'s M. He also characterized himself as a 204B acting supervisor in prior litigation before the Court. <u>Carter v. Potter</u>, No. 06-786 ("<u>Carter I</u>") Compl. ¶ 6. Further, he does not appear to contest the defendant's assertion that he was never a Level 17 supervisor, and he describes himself as a 204B supervisor in his opposition brief. <u>See</u> Pl.'s Opp. 1.

[4] The plaintiff also attaches to his memorandum of law the transcript of the EEO hearing held on January 8, 2009. The

Ex. 1 to Def.'s M.

A.     The May 2004 Incident and Meeting

On May 1, 2004, an incident occurred between the plaintiff and a female letter carrier from the Ambler post office.  The female carrier alleged that the plaintiff sexually harassed her while she was on her delivery route, and she complained to management.  John Kiley, a supervisor at the Ambler post office, and Carl Zingle, the Officer in Charge at the Ambler post office, opened an investigation and took statements from the witnesses.  During the investigation, the plaintiff admitted that his conduct towards the carrier "could be inappropriate."  Compl. ¶ 11; Ex. 2 at 194-96; 2004 Investigation Report, Ex. 4 to Def.'s M.

In response to the incident, management arranged for the plaintiff to receive some sexual harassment training, and on May 7, 2004, the plaintiff completed four video courses.  Compl. ¶ 15; Ex. 2 at 70-71; Employee Training History Report, Ex. 5 to Def.'s M.

On May 13, 2004, the plaintiff, Mr. Zingle, Dorita Barnes, Manager of Post Office Operations, and Ernestine Jenkins, Workplace Improvement Analyst, met to discuss the sexual

plaintiff's exhibit is the same as the defendant's exhibit in all respects.  The Court will refer to the exhibit as that attached to the defendant's motion solely for ease of reference.

harassment allegations.  Ms. Barnes told the plaintiff that he

would return to his letter carrier bid position and no longer

work as a temporary supervisor until he received further sexual

harassment training.  The plaintiff alleges that when he told Ms.

Barnes that he would like the matter further investigated and

that he would "take this legally," Ms. Barnes replied that her

"gloves would come off" if he pursued such actions.  Ms. Barnes

denies that she made this statement.  She claims that she

cautioned the plaintiff against an investigation because he may

"come out more on the losing end of something like that" due to

other incidents involving the plaintiff.  Compl. ¶¶ 11, 13, 14;

Ex. 2 at 116-21, 243-44, 268, 272.

B.  Additional Training

After the meeting on May 13, 2004, the plaintiff

returned to his letter carrier bid position at the Ambler post

office.  On June 13, 2004, he wrote to Ms. Barnes and expressed

his interest in any fill-in supervisory positions that became

available during the upcoming summer vacation months and that

were within a 10-mile radius of his home.  He also informed Ms.

Barnes that he retained legal counsel[5] to be contacted "on all

necessary matters."  The plaintiff attached to his letter an

Equal Employment Opportunity ("EEO") pre-complaint that he filed

---

[5] The plaintiff's current legal counsel has represented the
plaintiff in all matters relating to this lawsuit.

4

in response to the May incident.  Compl. ¶ 19; Letter from Stacey Carter to Dorita Barnes, June 13, 2004, Ex. 7 to Def.'s M.

Although the plaintiff alleges in his civil complaint that he received no response from Ms. Barnes, Ms. Barnes sent a letter to the plaintiff's counsel on June 28, 2004.  In her letter, Ms. Barnes reiterated that the plaintiff was returned to his official letter carrier bid position, but that he "was not . . . banned from acting in a supervisory capacity in the future" once he underwent additional training.  She also stated that further investigation into the May 2004 incident and additional sexual harassment training were available to the plaintiff, should he request them.  Compl. ¶ 19; Letter from Dorita Barnes to Shelley Farber, June 28, 2004, Ex. 6 to Def.'s M.

In June 2004, Mr. Zingle left the Ambler post office and Michael Todd replaced him as the Officer in Charge.  The plaintiff asked Mr. Todd several times in passing that he provide the plaintiff with sexual harassment training.  Mr. Todd testified that he forgot to follow up on these requests because, at the time, there were no supervisory openings at the Ambler post office.  The plaintiff did not contact Ms. Barnes or anyone other than Mr. Todd for the additional training.  Ex. 2 at 30, 57-58, 144-46, 201, 277-78.

In January 2005, the plaintiff applied to the post office's Associate Supervisor Program ("ASP"), which is a program

that trains employees to work as permanent supervisors.  On January 25, 2005, Mr. Todd submitted a positive recommendation for the plaintiff's application.  The plaintiff had an interview on March 13, 2005, but the interviewers informed him that he could not be considered for the program because he lacked necessary additional trainings.  Howard Sample, who was Ms. Barnes's superior, had written a note on the plaintiff's application to this effect.  Compl. ¶ 26-27; Ex. 2 at 28, 40, 50-53, 328-33.

After the interview, the plaintiff complained to Mr. Todd that he had not received the additional training that he needed.  He then requested that Mr. Todd arrange for the additional training, and on March 24, 2005, he sent a note to Mr. Todd with this request.  In response to the note, Mr. Todd sent an email to Joe DiDio, the district training coordinator, requesting training for the plaintiff.  When Mr. Todd did not receive a response, he did not follow up with his inquiry.  Ex. 2 at 37, 40-46; Note from Stacey Carter to Mike Todd, March 24, 2005, Ex. 8 to Def.'s M.

The plaintiff does not allege that he requested training again until September 20, 2006, when he did so in a certified letter to Mr. Todd.  In response to the letter, Mr. Todd called Mr. DiDio, and Mr. DiDio sent a list of videos that the plaintiff was to view.  The plaintiff viewed the videos on

October 12, 2006. Since completing this training, Mr. Carter has not been placed in a 204B supervisory position. Ex. 2 at 66; Ex. 5; Compl. ¶ 33.

### C. The Second ASP Application

The plaintiff completed a second ASP application on April 29, 2006, and he mailed his application by first class mail from the Ambler post office on May 1, 2006. The application noted that it was to be received by the closing date, which was May 4, 2006. Compl. ¶ 30; ASP Application, Ex. 11 to Def.'s M.; Affidavit Questions for EEO Complainant at 7, Ex. 21 to Def.'s M.

The plaintiff did not affix a stamp to his ASP application, and he did not select delivery confirmation when mailing it. Louetta Curry, the ASP coordinator, stamped the plaintiff's application and his envelope as being received on May 8, 2006. Photocopies of ASP Envelope, Ex. 12; Ex. 11; Ex. 21; Ex. 2 at 302-03.

On June 16, 2006, Ms. Curry sent a letter to the plaintiff notifying him that his application would not receive further consideration because the postal service received it after the closing date. Ms. Curry did not know the plaintiff, and she became the ASP Coordinator only one month before the plaintiff submitted his ASP application. Ms. Barnes, Mr. Todd, and Mr. Zingle were not involved in the ASP application rejection decision. The plaintiff previously acknowledged in an affidavit

that his application was not rejected because of his race or color.  Letter from Lou Curry to Stacey Carter, June 16, 2006, Ex. 13 to Def.'s M.; Ex. 2 at 298-99, 303-04; Ex. 21 at 7.

Ms. Curry disqualified other employees whose ASP applications were received after the closing deadline, including: Joseph Dobbins, white male, EEO activity; Tameka McDowell, black female, no EEO activity; Kevin Johnson, black male, no EEO activity; Gary Focht, white male, no EEO activity; Michelle DeFelice, white female, no EEO activity; and John Brown, white male, no EEO activity.  Letters from Lou Curry to Disqualified ASP Applicants, June 16, 2006, Ex. 14 to Def.'s M.; Ex. 2 at 305-08; Decl. of Marva M. Haye, Dec. 29, 2008, Ex. 15 to Def.'s M.

D.    The Plaintiff's Prior Action

The plaintiff filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC") sometime in May or June of 2004, in relation to the May 2004 sexual harassment incident.  An EEO Administrative Judge dismissed his complaint, and he received his right to sue letter on November 22, 2005.  On February 22, 2006, the plaintiff filed an employment discrimination action with the Court, styled Stacey Carter v. John Potter, Postmaster General, 06-786 ("Carter I").

In Carter I, the plaintiff alleged that he suffered employment discrimination based on his race, color, gender, and veteran status.  Specifically, he claimed that he was falsely

accused of sexual harassment due to an incident on May 1, 2004, and that the postal service: did not properly investigate the sexual harassment claim, punished the plaintiff by reassigning him from acting supervisor to letter carrier, failed to provide additional training to the plaintiff despite his repeated requests, failed to provide further opportunities to advance into management, and failed to interview the plaintiff in March 2005 for a promotion. Carter I Compl. ¶¶ 7-16.

On August 9, 2006, the Court dismissed Carter I as untimely because the plaintiff did not bring his action within ninety days of receiving his right to sue letter. Carter v. Potter, No. 06-786 (E.D. Pa. Aug. 9, 2006) (order granting defendant's motion to dismiss or in the alternative for summary judgment), Ex. 17 to Def.'s M. It also denied the plaintiff's motion for reconsideration. Carter v. Potter, No. 06-786, 2006 U.S. Dist. LEXIS 63268 (E.D. Pa. Sept. 5, 2006), Ex. 17 to Def.'s M. The United States Court of Appeals for the Third Circuit affirmed the Court's decision. Carter v. Potter, No. 06-4378, 2007 U.S. App. LEXIS 29360 (3d Cir. Dec. 18, 2007).

    E.    The Plaintiff's 2006 EEO Activity

The plaintiff again initiated EEO counseling on July 14, 2006. In August 2006, he filed a formal complaint, which underlies the present action. The EEO complaint asserted that the post office discriminated and retaliated against the

9

plaintiff due to race, color, and sex because: (1) his ASP application was denied consideration, having been received after the deadline; and (2) he was told in April 2006 that he would be given a day of sexual harassment training, but he did not receive the training. EEO Dispute Resolution Specialist's Inquiry Report, Ex. 18 to Def.'s M.; EEO Complaint of Discrimination in the Post Office, Ex. 9 to Def.'s M.; EEO Decision and Order, Mar. 30, 2009, Ex. 19 to Def.'s M.

Administrative Judge Julie Procopiow Todd held a hearing on the plaintiff's EEO complaint on January 8, 2009. Eight witnesses testified at the hearing, and the plaintiff was represented by his current counsel. On March 27, 2009, Judge Todd issued her decision, ruling that the plaintiff failed to establish a prima facie case of race, color, or sex discrimination; he failed to establish his reprisal claims; and that even if he had established such claims, there was no showing that the postal service's articulated legitimate, nondiscriminatory reasons for its actions were pretext for discrimination. Ex. 2; Ex. 19.

II.  <u>Analysis</u>

In the current action, the plaintiff asserts claims of race discrimination and retaliation under Title VII for the defendant's: (1) "faulty" investigation of the 2004 sexual harassment incident, (2) decision to return the plaintiff to his

10

letter carrier bid position, (3) statement by Ms. Barnes that her "gloves would come off" if the plaintiff pursued an investigation or legal action, (4) failure to provide training after verbal and written requests, (5) failure to interview the plaintiff for his March 2005 ASP application, and (6) rejection of the plaintiff's 2006 ASP application.[6]

The postal service moves to dismiss the plaintiff's complaint, or in the alternative, for summary judgment. It argues that first, res judicata applies to the plaintiff's claims that were asserted and decided in Carter I. Second, the plaintiff failed to exhaust his claims based on incidents that occurred prior to May 30, 2006, forty-five days prior to the

---

[6] In his brief in opposition, the plaintiff also asserts that he was discriminated and retaliated against because sometime around 2009, a "much less experienced female employee instead of [the plaintiff]" who is not African American received a 204B supervisory position at the Ambler post office. Pl.'s Opp. 7. He states that because he "has alleged that he directly sought a promotion from, inter alia, Michael Todd, and produced evidence that a promotion was given to a non African American female rather than [him]," his discrimination claims survive summary judgment, and any rationale for the decision is pretextual. Id. at 14.

The Court will not consider this claim of discrimination. First, the plaintiff did not assert a denial of promotion claim in his civil action or in his EEO complaint. See Francis v. Mineta, 505 F.3d 266, 272 (3d Cir. 2007) (requiring exhaustion of Title VII claims); Ex. 2 at 171-72. Second, the plaintiff does not point to any evidence that he directly sought this or any supervisory position beyond his request to Dorita Barnes in 2004 for a summertime 204B position. Third, there is no evidence that the female employee who received the 204B position was similarly situated to the plaintiff.

plaintiff's 2006 EEO counseling.  Third, the plaintiff cannot make out a prima facie case for his discrimination and retaliation claims arising from incidents after May 30, 2006. The plaintiff also cannot rebut the defendant's legitimate, nondiscriminatory reasons for its actions.

The plaintiff counters that his claims are timely under a continuing violations theory, at least to the extent that his claims relate to a failure to train and promote beginning in late 2005.[7]  He also argues that his claims of retaliation and discrimination are meritorious and survive summary judgment.

A court must convert a motion to dismiss to a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court."  Fed. R. Civ. P. 12(d).  When a motion to dismiss is alternately framed as a motion for summary judgment, and the nonmoving party submits evidence extraneous to its pleadings, the Court need not provide the parties with express notice of conversion.  See In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 288-89 (3d

_____

[7] The plaintiff appears to take conflicting positions with respect to which of his claims are appropriate for adjudication. He states that "all of [his] claims are timely with regards to all actions of failure to train and promote beginning in late 2005 because [he] can show at this stage a continual violation." Pl.'s Opp. 13-14.  He does not appear to assert that any incidents relating to 2004 and up to "late 2005" are part of an alleged continuing violation.  He also does not challenge the applicability of res judicata to his claims.  The plaintiff does argue, however, that the 2004 sexual harassment incident and the 2005 SAP interview rejection are actionable retaliatory actions.

12

Cir. 1999); Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996).

The Court is satisfied that adjudication under a summary judgment standard is proper for this action. The defendant frames its motion as a motion to dismiss, or, in the alternative, for summary judgment, and it attaches twenty-one exhibits to its motion. The plaintiff attaches two exhibits outside the pleadings to his brief in opposition, and he responds to the defendant's motion as a motion for summary judgment.

Although the parties did not engage in discovery under the Court's supervision, the plaintiff does not oppose the defendant's motion on any grounds related to a lack of discovery. Nor does the plaintiff submit an affidavit explaining that he cannot present facts essential to justify the motion's opposition. See Fed. R. Civ. P. 56(f). The plaintiff never requested that the Court order discovery or set a discovery schedule, and he had five months to respond to the defendant's motion, having received four unopposed extensions of time.[8]

---

[8] The plaintiff may have decided that discovery in this action was unnecessary because the parties already engaged in an extensive administrative process related to the plaintiff's claims. The plaintiff deposed at least six individuals, and the parties exchanged written discovery. Deposition Transcript Cover Sheets, Ex. 20 to Def.'s M. On January 8, 2009, Administrative Judge Todd held a full-day EEO hearing on the plaintiff's underlying EEO complaint. Ex. 2. Eight witnesses testified and were cross-examined at the hearing. Id. The plaintiff moved twenty-five exhibits into evidence, and the postal service moved six exhibits into evidence. Ex. 19 at 6. Both parties rely on

Under Rule 56 of the Federal Rules of Civil Procedure, a party moving for summary judgment must show that there is no genuine issue as to any material fact and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden then shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

A.   Res Judicata and a "Continuing Violation"

Pursuant to the doctrine of res judicata, the Court dismisses the plaintiff's claims related to those in Carter I. Res judicata, or claim preclusion, "protect[s] litigants from the burden of relitigating an identical issue with the same party or his privy and . . . promot[es] judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). It bars claims that were brought, or that could have been brought, in a previous action. In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008).

---

the testimony provided during this hearing to support their memoranda of law related to the defendant's present motion. At all times, the plaintiff has been represented by his current counsel.

To establish claim preclusion, the defendant must establish that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action. Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991). Whether a subsequent suit is based on the same set of facts from the previous suit "does not depend on the specific legal theory invoked, but rather 'the essential similarity of the underlying events giving rise to the various legal claims.'" Id. (quoting Davis v. U.S. Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982)).

The Court of Appeals for the Third Circuit has found that a disposition of a Title VII action as filed untimely is a decision on the merits for purposes of res judicata. Elkadrawy v. Vanguard Group, Inc., 584 F.3d 169, 173 (3d Cir. 2009) (finding prior dismissal for failure to file within ninety days of right to sue letter a final decision for res judicata purposes).

Here, the Court made a final judgment, affirmed on appeal, that the plaintiff's claims in Carter I were time-barred. The plaintiff seeks to reraise substantively identical claims in the instant action against the same defendant based on the same set of facts. For these reasons, the Court finds barred on res judicata grounds the plaintiff's claims of discrimination and retaliation relating to: (1) the investigation of the 2004 sexual

15

harassment incident; (2) the defendant's decision to return the plaintiff to his letter carrier bid position; (3) Ms. Barnes's statement that her "gloves would come off" if the plaintiff pursued an investigation or legal action; (4) the defendant's failure to provide training to the plaintiff, to the extent that this claim relates to the February 2006 lawsuit; and (5) the defendant's failure to interview the plaintiff for his March 2005 ASP application. All of these instances of alleged discrimination and/or retaliation were raised or could have been raised in Carter I.

Although the plaintiff does not address the issue of res judicata in his opposition brief, he does assert that his claims are timely under a "continual violation" theory. To the extent that the plaintiff asserts that a continuing violation prevents the Court from applying the principles of res judicata to his claims, the Court rejects the argument. A continuing violation may allow claims otherwise barred by a statute of limitations to go forward, but it does not defeat the doctrine of res judicata. See, e.g., Dubuc v. Green Oak Twp., 312 F.3d 736, 749-51 (6th Cir. 2002); Pitts v. Onondaga County Sheriff's Dep't, No. 04-828, 2009 U.S. Dist. LEXIS 90077, at *15 (N.D.N.Y. Sept. 29, 2009) ("Granted, the continuing violation doctrine . . . may have the effect of rendering timely an otherwise untimely claim. However, this doctrine cannot act as a vehicle to reopen claims

that have already been decided.").

The Court does not decide whether there is a continuing violation for claims prior to May 30, 2006, that would otherwise be time-barred for occurring forty-five days before the plaintiff initiated EEO counseling.  The plaintiff does not allege any discriminatory acts occurred between the filing of <u>Carter I</u> on February 22, 2006, and May 30, 2006, forty-five prior to his EEO counseling.  To the extent that the plaintiff's denial of training claim relates to this time period, the Court will consider it in the analysis below.

B.  <u>Discrimination and Retaliation</u>

The plaintiff's remaining claims of discrimination and retaliation relate to a failure to provide training opportunities from February 2006 until October 2006, and the rejection of the plaintiff's 2006 ASP application.  The Court finds that the plaintiff fails to establish a prima facie case for his claims. Further, even if he could establish a prima facie case, he does not refute the defendant's legitimate, nondiscriminatory reasons for the actions taken.

The Supreme Court's decision in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), controls the plaintiff's claims. To establish a prima facie case of discrimination, the plaintiff must show by a preponderance of the evidence that: (1) he is a member of a protected class; (2) he was qualified for the

position he held or sought; (3) he was subject to an adverse employment action; and (4) similarly situated members of other classes were treated more favorably, or other circumstances exist that give rise to an inference of unlawful discrimination. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999).

If the plaintiff establishes a prima facie case of discrimination, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. If the defendant can do so, then the burden shifts back to the plaintiff to demonstrate that the defendant's articulated reason is a pretext for discrimination. Id. at 410; see also McDonnell Douglas, 411 U.S. at 802-05.

To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in a protected activity, (2) his employer took an adverse action against him either after or contemporaneous with the protected activity, and (3) a causal link exists between the protected activity and the employer's adverse action. Slagle v. County of Clarion, 435 F.3d 262, 265 (3d Cir. 2006). Again, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. The burden then shifts back to the plaintiff to demonstrate that retaliation was the real reason for the action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d

Cir. 1997).

1. <u>Failure to Train</u>

The plaintiff asserts that he was discriminated and retaliated against because the postal service failed to provide training to the plaintiff, despite his requests. The delay in training does not constitute a valid claim of discrimination, however, because the plaintiff has failed to identify, or, it appears, to even allege, that any similarly situated letter carrier employees outside of his protected classes requested and were provided such training.

Even if the plaintiff could establish a prima facie case of discrimination based on a delay in training, he offers no evidence to demonstrate that the postal service's legitimate reason for the delay was a pretext for discrimination. An employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994). The plaintiff then must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. <u>Id.</u> at 764.

The defendant explains that the delay in training was a case of management "dropping the ball." There was no directive to provide training to the plaintiff, and there is no evidence that the plaintiff requested training outside of a note in March 2005 and a certified letter in September 2006 to Mr. Todd. Mr. Todd testified that he did not prioritize training for the plaintiff because there were no supervisory positions available at the Ambler post office. Further, approximately three weeks after Mr. Todd received the September 2006 certified letter from the plaintiff, the plaintiff received his training.

The plaintiff points to no evidence to demonstrate that the defendant's actions were pretextual. First, the plaintiff does not show that a factfinder could reasonably disbelieve Mr. Todd's articulated reasons for the delay. Any mismanagement on the part of the defendant is insufficient to meet the standard, as "the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d Cir. 1997) (quoting Fuentes, 32 F.3d at 765).

Second, the plaintiff has not shown that discrimination was "more likely than not" the motivation behind the defendant's action. He offers no direct evidence of discrimination, nor does he point to indirect evidence that Mr. Todd previously

discriminated against the plaintiff, previously discriminated against persons in the plaintiff's protected class, or treated similarly situated persons not in the plaintiff's protected classes more favorably.  See Simpson v. Kay Jewelers, Inc., 142 F.3d 639, 645 (3d Cir. 1998).  Indeed, Mr. Todd gave the plaintiff a positive recommendation on his 2005 ASP application.

The plaintiff also has not established a prima facie case of retaliation based on a lack of training because he does not satisfy the causation requirement.  There is insufficient evidence to find that the plaintiff's EEO activity, even including that activity relating to his 2004 EEO complaint, is causally connection to a lack of training.  The plaintiff filed his first EEO complaint in May 2004, alleging that Carl Zingle and Dorita Barnes took discriminatory actions against him.[9]  Mr. Todd was not named in the EEO complaint, nor was he involved in the incident underlying it.  Upon Mr. Todd's arrival at the Ambler post office, the plaintiff asked Mr. Todd for additional training.  Mr. Todd did not follow up on these training requests.  The plaintiff did not request training from anyone else.

As evidence of retaliation, the plaintiff points to the 2004 comment that Ms. Barnes allegedly made that her "gloves would come off" if the plaintiff pursued an investigation and

---

[9] The plaintiff also alleged that Dominic Camasso, who is not identified in this lawsuit, discriminated against him.  See EEO Complaint of Discrimination, Ex. 16 to Def.'s M.

legal action.  First, any claim based on this comment is barred
by res judicata, as explained above.  Second, even if this
comment were actionable, there is no causal connection between
the comment made and Mr. Todd's failure to provide training or to
follow up on the plaintiff's training request.  Mr. Todd, and not
Ms. Barnes, was the manager responsible for any training failure.
See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545
(3d Cir. 1992) ("Stray remarks by non-decisionmakers or by
decisionmakers unrelated to the decision process are rarely given
great weight, particularly if they were made temporally remote
from the date of decision.").[10]

        The plaintiff also cannot show retaliation after the
filing of his second EEO complaint in August 2006.  On October
12, 2006, no more than two months after this EEO activity, the
plaintiff receiving his sought sexual harassment training.

        2.  Rejection of the 2006 ASP Application

        To the extent that the plaintiff claims that he was
discriminated against because of the rejection of his 2006 ASP

_____

        [10] The plaintiff argues that Ms. Barnes was a decision-maker
because she had to approve any training the plaintiff was to
receive.  Pl.'s Opp. 10.  The record shows that letter carrier
employees needed special authorization to access the training
database.  Ex. 2 at 248-49.  When Ms. Barnes received
notification in 2006 from Mr. DiDio about the plaintiff's
training request, she granted it.  Id.  There is no evidence that
Ms. Barnes received any prior requests for training relating to
the plaintiff.  Further, the plaintiff never requested training
specifically from Ms. Barnes.

application,[11] his claim fails.  No similarly situated individuals whose applications were received after the deadline were treated more favorably than the plaintiff.  The postal service rejected late ASP applications from employees who were white and black, male and female, and with and without EEO histories.

Further, there is no evidence that Ms. Curry, the ASP Coordinator, knew the plaintiff, his race, or whether he had previous EEO activity.  There is also no evidence to demonstrate that Ms. Barnes, Mr. Todd, Mr. Zingle, or Mr. Sample had any role in the plaintiff's disqualification due to untimeliness.

For many of these same reasons, the plaintiff cannot make out a case of retaliation.  First, there is no causal nexus for this claim because Ms. Curry had no involvement with the plaintiff's prior EEO activity, nor with any incidents related to his work history.  Also, the plaintiff filed his EEO complaint approximately two years before he applied to the ASP program.  Second, the defendant explains that it rejected the plaintiff's application because the application, which did not have a stamp, was not received by the deadline.  The plaintiff points to no evidence to suggest that this action was pretextual.

---

[11] The plaintiff noted previously in an affidavit that the 2006 ASP application incident was not based on race or color discrimination.

III. <u>Conclusion</u>

For the reasons herein stated, the defendant's motion to dismiss, or in the alternative for summary judgment is granted.  An appropriate order shall issue separately.